## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

PT INDAH KIAT PULP & PAPER
CORP TBK,

      Plaintiff,

v.

CROWN ANDERSEN, INC.

      Defendant.

CIVIL ACTION

NO. _____

## PETITION TO CONFIRM FOREIGN ARBITRAL AWARD

**NOW COMES** PT INDAH KIAT PULP & PAPER CORP TBK, ("Plaintiff")
and files this Petition to Confirm Foreign Arbitral Award against Crown Andersen,
Inc. ("Defendant") alleging as follows:

## NATURE OF ACTION

This is an action brought pursuant to the Convention on the Recognition and
Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention") and 9
U.S.C. §§ 201 *et seq.* to confirm an arbitration award issued by the Singapore
International Arbitration Centre in favor of Plaintiff and against Defendant.

## PARTIES

### 1.

Plaintiff is a corporation incorporated under the laws of the Republic of Indonesia and is a citizen of the Republic of Indonesia.

### 2.

Defendant is a corporation incorporated under the laws of the State of Delaware.  Defendant's principal place of business is located at 306 Dividend Drive, Peachtree City, Fayette County, Georgia  30269.  Defendant may be served by and through its registered agent, Randall H. Morgan, at 306 Dividend Drive, Peachtree City, Fayette County, Georgia 30269.

## JURISDICTION AND VENUE

### 3.

This Court has jurisdiction over this Petition pursuant to 28 U.S.C. § 1331 inasmuch as this dispute aries under the Convention, a treaty entered into by the United States of America.  This Court has jurisdiction over this Petition pursuant to 28 U.S.C. § 1332(a)(2) inasmuch as this is a civil action between a citizen of a state and a citizen of a foreign state and the amount in controversy exceeds the sum of

$75,000.00 exclusive of interest and cost.  Additionally, this Court has jurisdiction over this Petition pursuant to 9 U.S.C. § 203.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 inasmuch as Defendant resides in this District.

**GENERAL ALLEGATIONS**

5.

Article I of the Convention requires that the Convention

> shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought . . ..  It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

6.

Article III of the Convention requires that contracting states recognize arbitration awards as binding and enforce such awards in accordance with the Convention.

7.

The arbitration award sought to be enforced pursuant to this Petition was issued by the Singapore International Arbitration Centre in Singapore.

8.

Both the Republic of Singapore and the United States of America are contracting States to the Convention.

9.

On July 10, 2000, Defendant entered into a guaranty agreement (the "Guaranty") with Plaintiff agreeing to guaranty the obligations of a subsidiary of Defendant with respect to a settlement agreement entered into by the subsidiary and Plaintiff. A certified true and correct copy of the Guaranty is attached hereto as **Exhibit A**.

10.

The Guaranty was executed by Defendant as a part of a commercial transaction.

11.

Clause 5 of the Guaranty provides for arbitration of disputes arising under the Guaranty as follows:

> 5.   This Guarantee and Indemnity is governed by and
> shall be construed in accordance with the laws of
> Singapore.  In relation to any claim, action or proceeding
> arising out of or in connection with this Guarantee and
> Indemnity, the parties shall submit to arbitration by a sole
> Arbitrator appointed by the Chairman of the Singapore
> International Arbitration Centre (SIAC).  Such arbitration
> shall be governed by the Rules of the SIAC and shall take
> place in Singapore.

12.

A dispute arose between Plaintiff and Defendant regarding Defendant's

obligations to pay under the Guaranty.

13.

On February 15, 2007, pursuant to Clause 5 of the Guaranty, Plaintiff initiated

an arbitration proceeding against Defendant by filing a Notice of Arbitration with the

Singapore International Arbitration Centre.

14.

Defendant responded to the Notice of Arbitration on March 1, 2007, denying

Plaintiff's claim and reserving its right to respond in more detail within the time

prescribed by the Rules of the Singapore International Arbitration Centre.

15.

Pursuant to the Guaranty, L P Thean was appointed as the sole arbitrator by the Deputy Chairman of the Singapore International Arbitration Centre.

16.

On or about May 16, 2007, Mr. William A. DuPre, counsel for Defendant in the Arbitration, informed the Singapore International Arbitration Centre that due to financial constraints Defendant would not participate in the arbitration.

17.

On or about May 30, 2007, the arbitrator informed Plaintiff and Defendant of his appointment and proposal for procedures to be used in the arbitration.

18.

On or about June 13, 2007, Defendant, through its attorney, informed the arbitrator that, due to financial constraints, neither Defendant nor its counsel would participate in the arbitration.

19.

Throughout the arbitration, Defendant was made aware of the proceeding and the actions being taken with respect to the arbitration.

20.

On or about December 26, 2007, the arbitrator informed counsel for Plaintiff and Defendant that he would conduct a preliminary hearing with respect to the arbitration in January of 2008.  Specifically, the arbitrator informed counsel for Defendant:

> If the Respondent wishes to participate at this hearing, please let me know and I shall make arrangements for a tripartite telephone conference at a time and date suitable to all parties.  If the time and dates as given are not suitable, I shall re-schedule a time and date that would be suitable to all parties.

Neither Defendant nor counsel for Defendant contacted the Arbitrator regarding the preliminary hearing.

21.

By letter to counsel for Plaintiff and Defendant, the arbitrator selected January 9, 2008 as the date for the preliminary hearing.  The arbitrator again informed counsel for Defendant that he was willing to reschedule the preliminary hearing to accommodate Defendant's schedule.  The arbitrator received no response from Defendant or counsel for Defendant.

22.

As a result of the preliminary hearing, the arbitrator scheduled the arbitration hearing to begin on March 4, 2008 in Singapore.  Defendant was informed of the hearing date, time, and location.

23.

On March 4, 2008, the arbitrator held the arbitration hearing.  Defendant was given the opportunity to present evidence, cross examine Plaintiff's witnesses, and provide arguments at the arbitration hearing.  Despite being given the opportunity to participate in the arbitration, Defendant failed to participate in the arbitration hearing.

24.

On April 4, 2008, the arbitrator issued his final award (the "Final Award"), finding against Defendant and awarding Plaintiff US$1,036,000 and interest at the rate of 4% from February 15, 2007 to the date of the Final Award.  Additionally, Plaintiff was awarded cost of the arbitration in the amount of US$ 36,589.50.  A certified true and correct copy of the Final Award is attached hereto as **Exhibit B**.

25.

The Final Award was made in accordance with the terms and provisions of the Guaranty and is in all respects proper.

26.

The Singapore International Arbitration Centre served a signed copy of the Final Award on Defendant and Counsel for Defendant on April 10, 2008.

27.

Defendant has filed no application with the arbitrator for a correction of the Final Award.

28.

Defendant has failed to pay to Plaintiff the amount awarded pursuant to the Final Award.

**CLAIM FOR RELIEF**

29.

Plaintiff is entitled to recognition and enforcement of the Final Award pursuant to the Convention and 9 U.S.C. §§ 201 *et seq*.

30.

Plaintiff hereby demand judgment against Defendant in the amount of US$1,036,000 and interest at the rate of 4% from February 15, 2007 to the date of the Final Award and cost of the arbitration in the amount of US$ 36,589.50, as provided in the Final Award, plus post-judgment interest at the allowable rate.

WHEREFORE, Plaintiff prays that this Court will:

A.      confirm the Final Award pursuant to the Convention and 9 U.S.C. § 207; and

B.      enter a Judgment against Defendant in the amount of US$1,036,000 and interest at the rate of 4% from February 15, 2007 to the date of the Final Award and cost of the arbitration in the amount of US$ 36,589.50, plus post-judgment interest at the allowable rate; and

C.      grant Plaintiff such other and further relief as may be just and proper.

Respectfully submitted this 31st day of March, 2011.

**COHEN POLLOCK MERLIN & SMALL**
A Professional Corporation
Attorneys for Plaintiff

By:___/s/ Brent W. Herrin_____
       Kevin T. O'Sullivan
       Georgia Bar No.: 555315
       Brent W. Herrin
       Georgia Bar No.: 614753

Suite 1600
3350 Riverwood Parkway
Atlanta, Georgia 30339
Telephone: (770) 858-1288
Facsimile: (770) 858-1277
kosullivan@cpmas.com
bherrin@cpmas.com
#667236v2<iManage> -Petition to Confirm Foreign Arbitral Award v2

# EXHIBIT A

140

DATED THE 10TH DAY OF JULY 2000

BY
CROWN ANDERSEN INC.
(the "Guarantor")

In favour of

PT INDAH KIAT PULP & PAPER TBK
("the Beneficiary")

GUARANTEE AND INDEMNITY

# CROWN ANDERSEN INC

141

THIS GUARANTEE AND INDEMNITY is made on 10 July, 2000
BY:

(1)     CROWN ANDERSEN INC. (the "Guarantor"), a company incorporated in the State of Delaware, USA, with its registered office at 306 Dividend Drive, Peachtree City, Georgia 30269 USA;

IN FAVOUR OF

(2)     PT INDAH KIAT PULP & PAPER TBK ("Beneficiary"), a company incorporated under the laws of Indonesia with its registered address at Wisma Indah Kiat, Gedung B, Lantai 4B, Jalan Raya Serpong Km 8, Tangerang, Jawa Barat, Indonesia.

WHEREAS:

The Guarantor, having considered the terms of the Settlement Agreement (defined below) and of this Guarantee and Indemnity and the actual and potential liability of the Company under the terms of the Settlement Agreement, and having satisfied itself that there are reasonable grounds for believing that its execution of this Guarantee and Indemnity will benefit it, has decided in good faith to execute this Guarantee and Indemnity.

NOW THIS GUARANTEE AND INDEMNITY WITNESSES as follows:

1.      In this Guarantee and Indemnity, except to the extent that the context requires otherwise:

(i)     the following terms shall have the following meanings:

"Company" means ANDERSEN 2000 INC.;

"Settlement Agreement" means the Settlement Agreement made on the [   ] day of June 2000 between the Company and the Beneficiary; and

"Guaranteed Obligations" means at all times, all obligations of the Company pursuant to, relating to or in connection with the terms of the Settlement Agreement as well as any warranty claims for which the Company is obligated to any person in connection with the incineration systems purchased by the Beneficiary from the Company pursuant to a contract dated 17 February 1996 (ref: SINCIN/-ANDERSEN/G) save that such warranty claims shall not be inconsistent with the provisions and spirit of the Settlement Agreement, and references to the Guaranteed Obligations include references to any part of them;

(ii)    all words and expressions defined or construed in the Settlement Agreement shall have the same meaning and construction in this Guarantee and Indemnity; and

**CROWN ANDERSEN INC**
306 Dividend Drive
Peachtree City, Georgia 30269 USA
Phone: (770) 631-0453
Fax: (770) 631-0730
Back-up Fax: (770) 487-5066
Internet: www.crownandersen.com
Email: a2k@crownandersen.com

1







142

2.      In consideration of the Beneficiary entering into the Settlement Agreement with the Company and the Beneficiary agreeing to the release of the Standby Letter of Credit No. SA99628096, the Guarantor unconditionally and irrevocably guarantees the proper and punctual performance by the Company of the Guaranteed Obligations and, without limiting the generality of the foregoing, unconditionally and irrevocably undertakes and agrees that, if for any reason the Company does not make perform any obligation under or in connection with the Settlement Agreement or any Guaranteed Obligation, the Guarantor will indemnify the Beneficiary against all damages and losses incurred or to be incurred and all costs (including legal costs on an indemnity basis), charges and all expenses whatsoever in connection therewith PROVIDED THAT the Guarantor shall in no event be liable for an aggregate sum exceeding US$(1,036,000.00).

3.      As between the Guarantor and the Beneficiary, the Guarantor shall be liable under this Guarantee and Indemnity as if it were the sole principal obligor and not merely a surety for the Guaranteed Obligations. Accordingly, it shall not be discharged, nor shall its liability be affected, by anything which would not discharge it or affect its liability if it were the sole principal obligor (including but not limited to (i) any time, indulgence, waiver or consent at any time given to the Company or any other person, (ii) any amendment or supplement to any provision of the Settlement Agreement or any other agreement or any security or other guarantee or indemnity, (iii) the making or absence of any demand on the Company or any other person for payment or other performance, and (iv) the enforcement or absence of enforcement of the Settlement Agreement, any other agreement, any Guaranteed Obligation or any security or other guarantee or indemnity or any other right or remedy).

4.      The obligations of the Guarantor under this Guarantee and Indemnity are and will remain in full force and effect by way of continuing security until no obligation remains to be performed under the Settlement Agreement and no other Guaranteed Obligation (whether actual or contingent) remains to be performed. Furthermore, those obligations are additional to, and not instead of, any other security or other guarantee or indemnity at any time existing in favour of the Beneficiary, whether from the Guarantor or otherwise.

5.      This Guarantee and Indemnity is governed by, and shall be construed in accordance with, the laws of Singapore. In relation to any claim, action or proceedings arising out of or in connection with this Guarantee and Indemnity, the parties shall submit to arbitration by a sole Arbitrator appointed by the Chairman of the Singapore International Arbitration Centre (SIAC). Such arbitration shall be governed by the Rules of the SIAC and shall take place in Singapore.

143

IN WITNESS WHEREOF, this Guarantee and Indemnity has been executed by the Guarantor as a deed on the date stated at the beginning.

The Common Seal of           )
CROWN ANDERSEN INC           )
was hereunto affixed in the  )
presence of:                 )

_____
BARBARA EDWARDS

_____
JACK D. BRADY
President and Chairman of the Board of Directors


_____
TOM VAN REMMEN, Director



_____
MILTON EMMANUELLI, Secretary

guar7.7wpd

3

# EXHIBIT B

## AT THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE

## IN THE MATTER OF AN ARBITRATION UNDER
## THE INTERNATIONAL ARBITRATION ACT (CAP. 143A)
## AND THE RULES OF THE
## SINGAPORE INTERNATIONAL ARBITRATION CENTRE
## (SIAC RULES, 2ND EDITION, 22 OCTOBER 1997)

### ARB No. 013 of 2007

Between

### PT INDAH KIAT PULP & PAPER CORP Tbk
*(Claimants)*

And

### CROWN ANDERSEN INC
*(Respondents)*

## CERTIFICATION

This is to certify that the attached documents are true copies of the Final Award dated 4 April 2008 in the above cause lodged in the SIAC Registry of Awards as Award No. 04 of 2008 on 4 April 2008 respectively.

Dated this 15 day of November 2010.



Minn Naing Oo
Registrar
Singapore International Arbitration Centre

## AT THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE

## IN THE MATTER OF AN ARBITRATION UNDER
## THE INTERNATIONAL ARBITRATION ACT (CAP. 143 A)
## AND THE RULES OF THE
## SINGAPORE INTERNATIONAL ARBITRATION CENTRE
## (SIAC RULES, 2nd Edition, 22 October 1997)

### ARB No. 013 of 2007

Between

### PT INDAH KIAT PULP & PAPER CORP Tbk
*(Claimants)*

And

### CROWN ANDERSEN INC
*(Respondents)*

---

## FINAL AWARD

---

Dated this 4th day of April 2008

Registered in SIAC Registry of Awards as:
Award No. 04 of 2008
on 4 April 2008





### AT THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE

IN THE MATTER OF AN ARBITRATION UNDER
THE INTERNATIONAL ARBITRATION ACT (CAP. 143 A)
AND THE RULES OF THE
SINGAPORE INTERNATIONAL ARBITRATION CENTRE
(SIAC RULES, 2ND Edition, 22 October 1997)

### ARB 013 OF 2007

Between

### PT INDAH KIAT PULP & PAPER CORP Tbk
*(Claimants)*

And

### CROWN ANDERSEN INC
*(Respondents)*

---

### FINAL AWARD

---

Before: Mr LP Thean, sole arbitrator

| Claimants: | Respondents: |
|---|---|
| PT Indah Kiat Pulp & Paper Corp Tbk | Crown Andersen Inc
*(did not participate)* |
| Represented by: | Represented by: |
| Mr Randolph Khoo and Ms Lim Tsu Yinn
of M/s Drew & Napier LLP | Mr William A. DuPré IV
of M/s Miller & Martin PLLC
*(did not participate)* |

Certified true copy of the original

_Registrar_

## INTRODUCTION

1. In this arbitration, the Claimants are PT Indah Kiat Pulp & Paper Corp Tbk (the "Claimants"), a corporation incorporated under the laws of Indonesia and having its registered office at Plaza BIL, 9ᵗʰ floor, Jalan MH Thamrin No 51 Jakarta, Indonesia, and the Respondents are Crown Anderson Inc (the "Respondents"), a corporation incorporated under the laws of the State of Delaware, United States of America and having its registered address at 306 Dividend Drive, Peachtree City, Georgia 30269, United States of America.

2. On 10 July 2000, a subsidiary of the Respondents, called Andersen 2000 Inc. ("Andersen"), entered into a Settlement Agreement with the Claimants with regard to certain disputes which had arisen between them.  On the same date, the Claimants and the Respondents entered into an agreement (the "Guarantee") whereby the Respondents guaranteed the proper and punctual performance by Andersen of its obligations under the Settlement Agreement, and agreed to indemnify the Claimants against all damages and losses incurred and all costs, including costs on an indemnity basis, charges and expenses whatsoever in connection with the Settlement Agreement, subject to and on the terms and conditions as provided in the Guarantee.

3. The Guarantee, by Clauses 2 and 3, provides as follows:

> "2.   In consideration of the Beneficiary [the Claimants] entering into the Settlement Agreement with the Company [Andersen] and the Beneficiary agreeing to the release of the Standby

Certified true copy of the original

Registrar

Letter of Credit No. SA99628096, the Guarantor [the Respondent] unconditionally and irrevocably guarantees the proper and punctual performance by the Company of the Guaranteed Obligations and, without limiting the generality of the foregoing, unconditionally and irrevocably undertakes and agrees that, if for any reason the Company does not make perform any obligation under or in connection with the Settlement Agreement or any Guaranteed Obligation, the Guarantor will indemnify the Beneficiary against all damages and losses incurred or to be incurred and all costs (including legal costs on an indemnity basis), charges and all expenses whatsoever in connection therewith PROVIDED THAT the Guarantor shall in no event be liable for an aggregate sum exceeding US$(1,036,000.00) [sic].

3.       As between the Guarantor and the Beneficiary, the Guarantor shall be liable under this Guarantee and Indemnity as if it were the sole principal obligor and not merely a surety for the Guaranteed Obligations.     Accordingly, it shall not be discharged, nor shall its liability be affected, by anything which would not discharge it or affect its liability if it were the sole principal obligor (including but not limited to (i) any time, indulgence, waiver or consent at any time given to the Company or any other person, (ii) any amendment or supplement to any provision of the Settlement Agreement or any other agreement or any security or other guarantee or indemnity, (iii) the making or absence of any demand on the

**Certified true copy of the original**

Registrar

Company or any other person for payment or other performance, and (iv) the enforcement or absence of enforcement of the Settlement Agreement, any other agreement, any Guarantee Obligation or any security or other guarantee or indemnity or any other right or remedy)."

4.    Subsequently, disputes arose between the Claimants and Andersen, and the Claimants initiated proceedings in arbitration, namely: SIAC No 85 of 2001, claiming damages against Andersen, and the latter disputed the claim. On 30 January 2004, the arbitrator in that arbitration, having conducted a hearing, made and published an award (the "liability Award"), in which he found that Andersen was in breach of their obligations under the Settlement Agreement, and following the liability Award, the learned arbitrator assessed the loss and damage sustained by the Claimants in the sum of US$9,111,628.56 and awarded to the Claimants, among other things, that amount as damages for breach of contract.

## DISPUTE BETWEEN THE CLAIMANTS AND THE RESPONDENTS

5.    Subsequently, the Claimants, by a notice dated 24 June 2005, demanded from the Respondents payment of the sum of US$1,036,000 under the Guarantee. In response, the Respondents, through their attorneys, M/s Miller & Martin PLLC, wrote to the solicitors for the Claimants and disputed liability for payment of the amount, and said, among other things, the following:

"The undersigned [Mr William A DuPre, IV] represents Crown Anderson Inc., and we are in receipt of a copy of your letter to Jack

Certified true copy of the original

2E-267

•••••••••••••••••••••••••••••••••••••••••••••••••
Registrar

Brady dated June 24, 2005, asserting an alleged arbitral award against Anderson 2000 Inc. in favor of PT Indah Kiat Pulp & Paper Tbk ("IKPP"). As you are undoubtedly aware, Anderson 2000 has filed a voluntary bankruptcy petition under Chapter 11, Title 11, United States Code. Pretermitting the propriety of asserting IKPP's claims against Crown Anderson on the basis of a settlement agreement which never went into effect, we believe your efforts to collect amounts allegedly owed by Anderson 2000 amount to a willful violation of the automatic stay under 11 U.S.C. 362."

## ARBITRATION PROCEEDINGS

6.   On 15 February 2007, the Claimants, acting under Clause 5 of the Guarantee, initiated this arbitration against the Respondents by taking out the Notice of Arbitration pursuant to the Rules of the Singapore International Arbitration Centre (the "SIAC Rules"). The said Clause 5 of the Guarantee provides as follows:

"5     This Guarantee and Indemnity is governed by and shall be construed in accordance with the laws of Singapore. In relation to any claim, action or proceedings arising out of or in connection with this Guarantee and Indemnity, the parties shall submit to arbitration by a sole Arbitrator appointed by the Chairman of the Singapore International Arbitration Centre (SIAC). Such arbitration shall be governed by the Rules of the SIAC and shall take place in Singapore."

Certified true copy of the original

2I=2&P

••••••••••••••••••••••••••••••••••••••
Registrar

7.   In the Notice of Arbitration, among other things, the Claimants claim against the Respondents the sum of US$1,036,000, interest thereon, costs, fees and expenses.

8.   The Respondents responded to the Notice of Arbitration by filing and serving the Response dated 1 March 2007. In the Response, the Respondents deny the claim and reserve their right to respond in more detail by way of defence to the claim within the time prescribed in the SIAC Rules. They also reserve their right to assert their counterclaims within the time prescribed.

9.   Pursuant to Clause 5 of the Guarantee, I was appointed the arbitrator of this dispute by the Deputy Chairman of the Singapore International Arbitration Centre ("SIAC") on 14 May 2007. By a letter of the same date, SIAC informed the parties of my appointment.

10.   By a letter dated 16 May 2007, Mr William A DuPre, IV of M/s Miller & Martin PLLC acting for the Respondents, informed SIAC that due to financial constraints, the Respondents would not be participating in this arbitration thenceforth. A copy of the said letter was subsequently extended to me by SIAC.

11.   On 30 May 2007, I wrote to the solicitors or attorneys acting for the respective parties informing them of my appointment and stating that I propose to settle the directions for delivery of pleadings, discovery/production of documents and exchange of witnesses' statements, and set out therein my proposed directions

Certified true copy of the original

～＝２６＿

••••••••••••••••, •••••••••••••••••••••••••••••••••••
Registrar

for their consideration.  In response, M/s Drew & Napier, by their letter of 1 June 2007 written to me, suggested some changes to the various steps to be taken.  A copy of this letter appeared to have been sent to M/s Miller & Martin PLLC (and marked for the attention of Mr William A DuPre, IV).  On or about 14 June 2007, I received by fax and email a letter dated 13 June 2007 from Mr William A DuPre, IV of M/s Miller & Martin PLLC stating the following:

> "Due to financial constraints, Crown Andersen and this firm will not be participating in the above-referenced arbitration.  Thank you for your attention to this matter."

12.   On 21 June 2007, I settled the directions for the delivery and service of pleadings incorporating the suggestions made by M/s Drew & Napier and thereupon I served on each of the parties by fax and post such directions. Pursuant to the directions made by me, the Claimants filed and served on me the Statement of Case and supporting documents.  By a query from the SIAC, the Claimants confirmed that they also served on the Respondents (through M/s Miller & Martin PLLC) the Statement of Case and supporting documents.  No Statement of Defence was filed and served by the Respondents in accordance with the time prescribed in my directions or at any subsequent time.

13.   On 10 September 2007, I issued further directions that the Claimants and the Respondents file and serve on each other and on the Tribunal written statements of witnesses and that each such written statement be admitted as the evidence-in-chief of the witness at the hearing and such witness be available for cross-examination at the hearing.  The letter setting out such directions was sent to

Certified true copy of the original

Registrar

both parties, namely, M/s Drew & Napier and M/s Miller & Martin PLLC. Subsequently, the Claimants requested for an extension of time for filing and serving the statements of witnesses, and I allowed the extension.

14.    The Claimants duly filed and served written statements of witnesses and it appeared that a copy of each of such statements was served on the Respondents (through M/s Miller & Martin PLLC). There was no written statement of any witness filed and served by or on behalf of the Respondents.

15.    On 26 December 2007, I wrote to the solicitors/attorneys for the respective parties informing them that I would conduct a preliminary hearing with a view to fixing a date for the hearing of this arbitration, and that I would be available to conduct the hearing on any day during the period between 7 and 11 January 2008 and requested the parties to let me know a convenient date within this period. I also said at the last paragraph of the letter the following:

> "4    If the Respondent wishes to participate at this hearing, please let me know and I shall make arrangement for a tripartite telephone conference at a time and date suitable to all parties. If the time and dates as given are not suitable, I shall re-schedule a time and date that would be suitable to all parties."

16.    M/s Drew & Napier on behalf of the Claimants wrote to me proposing the date of 9 January 2008 for the preliminary hearing at a time and place convenient to the Tribunal. By my letter dated 4 January 2008 written to the parties, I

Certified true copy of the origin...

フェラ？

Registrar

informed them that the preliminary hearing would be held on 9 January 2008 at 11.00 am at the office of KhattarWong. The letter said as follows:

> "I refer to the letter from Drew & Napier dated 4 January 2008, and write to confirm that the preliminary hearing will be held on 9 January 2008 at 11.00 a.m. at KhattarWong's office.
>
> 2    I repeat paragraph 4 of my letter of 26 December 2007. If the Respondent wishes to participate at this hearing, please let me know by the close of 8 January 2008, and I shall re-schedule the hearing and make arrangement for a tripartite telephone conference on a date and at a time suitable to all parties."

17.  I had no response from the Respondents or their attorneys on the letter. Accordingly, I held the preliminary hearing on the date and at the time as stated in my letter of 4 January 2008, and, after hearing counsel for the Claimants, I made the necessary directions for the hearing of the arbitration. I directed, among other things, that the hearing of the arbitration be held on 4 March 2008 at the conference room of KhattarWong. A copy of the directions was sent to both parties. The directions I made, in so far as relevant, were as follows:

> "1.    The hearing of this arbitration will be held on 4 March 2008 at a Conference Room of KhattarWong, 80 Raffles Place, Singapore, commencing at 10.00am.
>
> 2.    All the witnesses' statements of facts filed by the Claimant, which have been affirmed or sworn, shall be admitted as evidence-in-chief.

Certified true copy of the original

~~ZE-2GP~~

Registrar

3.  Subject to the direction below, all such witnesses shall be made available for cross-examination by or on behalf of the Respondent.

4.  The Respondent shall notify the Tribunal by the close of 15 February 2008 whether or not the Respondent wishes to cross-examine the Claimant's witnesses or any of them on their affirmed or sworn written statements. If the Respondent fails or omits to notify the Tribunal by the said time and date, the Respondent shall be deemed to have elected not to cross-examine the witnesses or any of them."

18.  During the hearing held on 4 March 2008, counsel for the Claimants and three witnesses for the Claimants, namely: Dr Arbeit J Horng, Mr Ferry Djongianto and Mr Chen Ching-Ming ("Mr Chen"), appeared before me. However, no representative appeared on behalf of the Respondents.

19.  Counsel informed me that the three witnesses for the Claimants who were before me were available for cross-examination on their written statements. Counsel submitted that, following the directions I made on 4 March 2008, there was no need for any witnesses to be present for cross-examination, as no notice of cross-examination of any of them was given to the Claimants. However, counsel stated that these witnesses were very important witnesses in support of the Claimants' case and he requested them to be present.

Certified true copy of the original

╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌╌
Registrar

20.   Since the three witnesses for the Claimants were present, I directed that they each affirm before me that the statements they each made were true and correct. They each did so and thereafter, they were released.  In addition, there were 9 more written statements of witnesses for the Claimants (which had been filed and served some time ago) and counsel asked that these statements be admitted in evidence pursuant to the directions I made.  As no notice was given requiring these witnesses to be present for cross-examination pursuant to the directions I made, I admitted these statements in evidence.

21.   As I said above, no defence to the claim of the Claimants was submitted or put forward by the Respondents.  Nor was anyone present before me, who argued the case or adduced any evidence against the claims of the Claimant.  Thus, the case of the Claimants and the evidence adduced on their behalf stand unrebutted.

**DECISION**

22.   The claim of the Claimants is made under the Guarantee and the claim is for the full amount provided therein, i.e. US$1,036,000.  It is not in dispute that the Claimants and Andersen entered into the Settlement Agreement on 10 July 2000 and that at the same time or thereabouts, the Respondents entered into the Guarantee in favour of the Claimants.  Under the Guarantee, the Respondents guarantee the "proper and punctual performance" by Andersen of its obligations under the Settlement Agreement and further, and in particular, the Respondents undertake and agree that "if for any reason the Company [Andersen] does not. . . . . . .  perform any obligation under or in connection with the Settlement

Certified true copy of the original

Registrar

Agreement or any Guaranteed Obligation, the Guarantor will indemnify the Beneficiary [the Claimants] against all damages and losses incurred or to be incurred and all costs (including legal costs on an indemnity basis), charges and all expenses whatsoever in connection therewith PROVIDED THAT the Guarantor [the Respondents] shall in no event be liable for an aggregate sum exceeding US$(1,036,000.00)" [sic].

23.   The evidence adduced by the Claimants shows that Andersen failed to perform its obligations under the Settlement Agreement, and pursuant to the terms thereof, the Claimants instituted arbitration proceedings against Andersen in SIAC Arbitration No 85 of 2001.   In the said arbitration, the learned arbitrator on 30 January 2004 made and published his award, in which he found that Andersen was in breach of the Settlement Agreement and was liable in damages to the Claimants.   Subsequently, on 25 May 2004, the learned arbitrator made and published his final award, in which he found that the Claimants had suffered loss and damage and awarded the Claimants the sum of US$9,111,628.56 as damages for breach of contract.   Thereafter, the Claimants demanded payment under the Guarantee in the sum of US$1,036,000 (which is the maximum sum payable under the Guarantee), but the Respondents failed or refused to pay the same.   In my view, under Singapore Law, the production of the liability Award and the Final Award obviates the need for adducing proof of the actual loss and damage sustained by the Claimants.

Certified true copy of the origin..

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Registrar

24.     In any event, apart from the two Awards made in the Arbitration No 85 of 2001, the Claimants also produced before me evidence (in the form of the written statement of Mr Chen and the exhibits produced by him and annexed to his statement) which shows that Andersen had acted in breach of the Settlement Agreement and that the Claimants had sustained loss and damage far exceeding the amount of US$1,036,000 guaranteed under the Guarantee.  There is no rebutting evidence to the contrary.  Mr Chen was not cross-examined on his evidence; his evidence therefore remains unchallenged.  As shown above, he was present and was available for cross-examination.

25.     Before I conclude on the claim of the Claimants, I should address one legal point, which was raised by the attorneys of the Respondents in defence of the claim before the commencement of the arbitration proceedings.  In their letter of 2 August 2005, M/s Miller & Martin PLLC said, among other things, that Andersen had filed a voluntary bankruptcy petition under Chapter 11, Title 11, United States Code, and that consequently, any attempt to collect amounts due or owed by Anderson would amount to a "willful violation of the automatic stay under 11 USC 362".  In other words, the Claimants are precluded from taking action against the Respondents by the fact that Anderson is under the protection of Chapter 11 of the United States Code.  In response to the contention of M/s Miller & Martin PLLC, M/s Drew & Napier contended that a stay under Chapter 11 of the United States Code of any action or proceeding against Andersen does not protect a guarantor from liability for Andersen's obligations, and they cited the decision of the US court in *In re Benbo of Georgia Inc* 1992 WL 12004318 in support.  Further, it was contended that in any case, under the

Certified true copy of the original

/ ?∑ · ?∑ · ?

••••••••••••••••••••••••••••••••••••••••••••••••
-  ___.              Registrar

express terms of Clause 3 of the Guarantee, the Respondents are liable as if they were the sole principal obligor and not merely as a surety for Andersen.

26.   In paragraphs 21 to 23 of the Statement of Case, the Claimants aver as follows:

"21.   The United States Court of Appeal for the Sixth Circuit held in *Lincoln Lynch, et al v Johns-Manville Sales Corporation, et al* (710 F.2d 1194), (Tab 2 attached) that:

"It is universally acknowledged that an automatic stay of proceeding accorded by [Chapter 11 United States Code § 362 "**§ 362**"] may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor."

22.   The United States of Court of Appeal for the Fourth Circuit held in *Credit Alliance Corporation v Gary L Williams* 851 F.2d 119 ($4^{th}$ Cir. 1988) . . . . . that:

"Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt ......"

23.   Citing the case *Rojas v First Bank National Association* 613 F.Supp 968, 971 (E.D. N.Y. 1985), the Court in *Credit Alliance Corporation* (Tab 3) held that "[t]he very purpose of a guaranty is to assure the [creditor] that in the event the

Certified true copy of the original

*DE-262?*

Registrar

[debtor] defaults, the [creditor] will have someone to look to for reimbursement." "

27.   Clause 5 of the Guarantee provides that the Guarantee is governed by and is to be construed in accordance with the Law of Singapore. It is therefore submitted on behalf of the Claimants that in Singapore, the legal position is the same: the bankruptcy of the principal debtor does not discharge the liability of the guarantor under the guarantee: see *Law of Pledges, Guarantees and Letters of Credit* (5th Edition, 2003) paras 492–493 by Professor Poh Chu Chai; *Lee Wah Bank Ltd v Joseph Eu* [1981] 1 MLJ 11; and *The Law of Guarantees in Singapore and Malaysia* (2nd Edition, 2003) at p 180 by Low Kee Yang. It is further submitted that under Clause 3 of the Guarantee the Respondents are liable as a principal obligor and not merely as a surety of the obligations of the principal debtor, i.e. Andersen. I agree entirely with these submissions of the Claimants.

28.   For the reasons given, I find that the Respondents are liable to pay the Claimants the sum of US$1,036,000, being the maximum amount of their (the Respondents') liability under the Guarantee.

**INTEREST**

29.   The Claimants ask for interest to be allowed on the amount awarded. I agree that interest should be allowed. The only question is the appropriate rate. In commercial arbitration, it is not uncommon or unusual to award interest at the rate between 4% and 6% per annum. In the circumstances of this case, I would

Certified true copy of the original

⟶I-⟶

•••••••••••••••••••••••••••••••••••••••••••••••••••
Registrar

allow interest on the award at the rate of 4% per annum, which in my view is a reasonable rate.

## AWARD

30.   For the reasons given the Tribunal hereby AWARDS AND DIRECTS as follows:

    (a)    that the Claimant be and is hereby awarded the sum of US$1,036,000, and that the Respondents do pay the said sum to the Claimant; and

    (b)    that the Respondents do pay interest on the said sum of US$1,036,000 at the rate of 4% from 15 February 2007, being the date when this arbitration was initiated to the date of the Award.

## COSTS

31.   The Claimants are entitled to the costs of these proceedings.   The Tribunal hereby AWARDS AND DIRECTS the following:

    (a)    that the Respondents pay the costs of the arbitration referred to and defined in Rule 30.1 of the SIAC Rules;

    (b)    that the costs of the arbitration referred to above be paid in the first instance out of the deposits paid by the Claimants and the Respondents to the SIAC and that both the Claimants and the Respondents be jointly and severally liable for the full payment of the costs of the arbitration;

    (c)    that the Respondents reimburse the Claimants in full for such part of the costs of the arbitration, whether paid by the Claimants direct or paid out of the deposits made by the Claimants; and

Certified true copy of the original.

Registrar

    (d)      that the Respondents pay the Claimants the latter's legal costs, expenses and disbursements of this arbitration referred to in Rule 30.3 of the SIAC Rules to be taxed by the Registrar of SIAC.

32.    For the purpose of Rule 30.2 of the SIAC Rules the costs of the arbitration are specified as follows:

| | | | |
|---|---|---|---|
| (a) | the costs and expenses of the Arbitrator, | | |
| | Mr L P Thean in the sum of | S$ | 30,040.00 |
| (b) | the expenses of the Singapore International | | |
| | Arbitration Centre referred to in Rule 30.1(e) | | |
| | of the SIAC Rules: | S$ | 6,549.50 |
| | Total: | S$ | 36,589.50 |

**FINALITY**

33.    The Tribunal hereby declares that this Award is final in respect of liability of the parties under the Guarantee and the amount awarded to the Claimants and also in respect of the costs, fees and expenses in this arbitration.

Place of Arbitration: Singapore

Dated this 4th day of April 2008

_L P Thean_
L P Thean
Arbitrator

Certified true copy of the original

Registrar